UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WENDELL STAMPLEY, | * |
| | * |
| Petitioner, | * |
| | *   Criminal No. 1:11-cr-10302-IT |
| v. | * |
| | * |
| UNITED STATES OF AMERICA, | * |
| | * |
| Respondent. | * |

MEMORANDUM & ORDER

September 9, 2016

TALWANI, D.J.

I.   Introduction

Petitioner Wendell Stampley moves to vacate his sentence for Distribution of Cocaine pursuant to 28 U.S.C. §2255 and Johnson v. United States, 135 S. Ct. 2551 (2015). For the reasons stated below, Petitioner's Motion to Correct Sentence [#100] is ALLOWED.

II.   Background

Petitioner pled guilty to distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) on July 9, 2013. See Clerk's Notes for Rule 11 Hearing [#66].

At the time, the United States Sentencing Guidelines ("USSG") provided for a guideline sentence of 151-188 months. See Judgment 7 [#79]. Under USSG §§ 4B1.1 & 4B1.2, Petitioner qualified as a career offender based on two convictions: resisting arrest and possession with intent to distribute cocaine. Def. Sentencing Mem. 4 [#70]. If Petitioner had not been considered a career offender, then his guideline range would have been 24 to 30 months. Id. On November 13, 2013, the court sentenced Petitioner to 60 months in prison. Judgment [#79]. On September 3, 2014, Petitioner's appeal was dismissed on his own motion.

Contending that he no longer qualifies as a career offender after <u>Johnson</u>, on June 23, 2016, Petitioner filed the motion to vacate and correct his sentence under 28 U.S.C. § 2255.

III. <u>Discussion</u>

    *a. Standard of Review and Statute of Limitations under 28 U.S.C. § 2255*

Under 28 U.S.C. § 2255, a petitioner may collaterally attack a conviction after it has become final. Relief under § 2255 requires an error that is jurisdictional, constitutional, a "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. United States</u>, 442 U.S. 178, 185 (1979).

Under 28 U.S.C. § 2255(f), a one-year period of limitation applies to such collateral attack, running from the date the judgment of conviction becomes final, or from another date permitted by statute, including "the date on which the right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review." As the government notes, "'[d]istrict and appellate courts, no less than the Supreme Court, may issue opinions on initial petitions for collateral review holding in the first instance that a new rule is retroactive in the absence of a specific finding to that effect by the Supreme Court' for the purpose of the limitations period in §2225(f)(3)." Gov't's Post-Hearing Submission 3 (quoting <u>Butterworth v. United States</u>, 775 F.3d 459, 464 (1st Cir. 2015), <u>cert. denied</u>, 135 S. Ct. 1517 (2015)).[1]

---

[1] In contrast, under 28 U.S.C. § 2255(h), to obtain authorization for second or successive §2255 motions, a petitioner must show, among other things, that his motion relies upon "a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*, that was previously made unavailable." (Emphasis added).

*b. The Supreme Court Newly Recognized a Constitutional Right in <u>Johnson</u>*

In <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), the Supreme Court reviewed the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), which defined a "violent felony" as a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." The Court found "the indeterminancy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." <u>Id.</u> at 2557. The Court concluded that the residual clause of the ACCA was unconstitutionally vague and that "[i]ncreasing a defendant's sentence under the clause denies due process of law." <u>Id.</u> at 2563, 2557. It is undisputed that <u>Johnson</u> announced a new rule.

The residual clause in USSG § 4B1.2(a)(2) is identical to the clause invalidated in <u>Johnson</u>. It is comprised of the same fifteen words as those found in <u>Johnson</u> to be unconstitutionally vague. <u>Johnson</u> itself reviewed cases interpreting § 4B1.2(a)(2)'s residual clause in considering the ACCA's residual clause, <u>see</u> 135 S. Ct. at 2559-60, and this Circuit has "consistently equated" the term "violent felony" as used in the ACCA with term "crime of violence" used in the career offender guideline, calling the terms "nearly identical in meaning, so that decisions construing one term inform the construction of the other," and has "treat[ed] the terms interchangeably." <u>U.S. v. Velazquez</u>, 777 F.3d 91, 94 n.1 (1st Cir. 2014) (citations omitted).

Accordingly, <u>Johnson</u>'s determination that the residual clause in the Armed Career Criminal Act is unconstitutional compels the finding that the identical residual clause in the Career Offender Guidelines is also unconstitutional.

    *c.* The Right Recognized in <u>Johnson</u> and Applied to the Guidelines is a Retroactive Substantive Rule

    Generally, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." <u>Welch v. United States</u>, 136 S. Ct. 1257, 1264 (2016) (quoting <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989).). But rules that are "substantive" as opposed to procedural may apply retroactively. <u>Id.</u> (quoting <u>Schriro v. Summerlin</u>, 542 U.S. 348, 351 (2004).[2] "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons the law punishes." <u>Id.</u> at 1264-65 (quoting <u>Schriro</u>, 542 U.S. at 353); <u>see also</u> <u>Montgomery v. Louisiana</u>, 136 s. Ct. 718, 729 (2016). Substantive rules include "decisions that narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons beyond the State's power to punish." <u>Id.</u> at 1265 (quoting <u>Schriro</u>, 542 U.S. at 351-52). Procedural rules, on the other hand, "regulate only the *manner of determining*" a defendant's culpability and alter "the range of permissible methods for determining whether a defendant's conduct is punishable." <u>Id.</u> at 1265 (quoting <u>Schriro</u>, 542 U.S. at 353) (emphasis in the original). "They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with the use of the invalidated procedure might have been acquitted otherwise." <u>Id.</u> (quoting <u>Schriro</u>, 542 U.S. at 352).

    In <u>Welch</u>, the Supreme Court concluded that the new rule announced in <u>Johnson</u> was "substantive" and that <u>Johnson</u> has "retroactive effect in *cases on collateral review*." <u>Welch</u>, 136 S. Ct. at 1265 (emphasis added). The United States nonetheless asks this court to find <u>Johnson</u>,

---

[2] "Watershed rules of criminal procedure" which "implicat[e] the fundamental fairness and accuracy of the criminal proceeding" may also apply retroactively on collateral review. <u>See</u> <u>Saffle v. Parks</u>, 494 U.S. 484, 495 (1990). Here, Petitioner does not argue that <u>Johnson</u> is a watershed rule of criminal procedure.

4

as applied to the Guidelines, to be a procedural rule as applied to the Guidelines.

Courts concluding that Johnson as applied to the Guidelines is procedural have focused on the advisory nature of the Guidelines as opposed to the mandatory nature of statutory sentences and have concluded that the Guidelines merely "guide the execution of a court's discretion in selecting the appropriate sentence from within an otherwise stagnate range of lawful penalties." Lynn v. United States, Nos. 3:15-CV-571-TWP, 3:09-CR-77-TWP-CCS-1, 2016 WL 1258487, at *3 (E.D. Tenn. Mar. 30, 2016) (citing Mistretta v. United States, 488 U.S. 361, 396 (1989)). Unlike Johnson as applied to the ACCA, the cases state, Johnson as applied to the Guidelines does "not 'narrow the scope of a criminal statute by interpreting its terms' or 'place particular conduct or persons beyond the State's power to punish.'" Hallman v. United States, No. 3:15-cv-00468-MOC, 2016 WL 593817, at *5 (W.D.N.C. Feb. 12, 2016). See also, e.g., United States v. Cervantes, No. 4:11CR3099, 2016 WL 715796 (D. Neb. Feb. 22, 2016); United States v. Willoughby, Nos. 3:10 CR 431, 3:15 CV 1087, 2015 WL 7306338, at *7 (N.D. Ohio Nov. 18, 2015).[3]

Other cases recognize that the Guidelines "hardly represent a mere suggestion to courts about the proper sentences defendants should receive" and are instead "'the lodestone of sentencing.'" In re Hubbard, 825 F.3d 225, 235 (4th Cir. 2016) (quoting Peugh v. United States, 133 S. Ct. 2072, 2084 (2013)). See also, e.g., Fleming v. United States, -- F. Supp. 3d --, Nos.

---

[3] The United States also brings to the court's attention the First Circuit's decision in United States v. Giggey, 551 F.3d 27 (1st Cir. 2008). In holding that a conviction under Maine law for non-residential burglary was not a crime a violence under the sentencing Guidelines, the First Circuit stated that its decision as to crimes of violence under the Guidelines was only procedural and therefore not retroactive. Id. at 36 n.3. The United States concedes that this statement on retroactivity was dicta. The First Circuit did not have the opportunity to fully consider the issue, and its opinion is uncertain given Supreme Court decisions that came out after 2008, including Welch.

16-cv-10085, 09-cr-20275, 2016 WL 3647999 (E.D. Mich. June 28, 2016); United States v. Ramirez, -- F. Supp. 3d --, No. 10-10008-WGY, 2016 WL 3014646 (D. Mass. May 24, 2016).

The Supreme Court recently confirmed the Guidelines' "central role in sentencing," such that they were more than mere advisory benchmarks. Molina-Martinez v. United States, 136 S. Ct. 1338, 1345 (2016). The court stated that the sentencing Guidelines "are to be the sentencing court's starting point and . . . initial benchmark'" and are the "'framework for sentencing' and 'anchor the district court's discretion.'" Id. (quoting Gall v. United States, 522 U.S. 38, 49 (2007) and Peugh, 133 S. Ct. at 2083, 2087).

Indeed, a sentencing court, before "embarking on the 'advisory' component of sentencing" under the Guidelines, Ramirez, 2016 WL 3014646, at *7, is *required* to first consider the Guidelines. See 18 U.S.C. §3553(a)(4); see also Molina-Martinez, 136 S. Ct. at 1345 (noting that courts "must" begin their analysis with the Guidelines and "remain cognizant of them throughout the sentencing process" (internal quotation marks and citation omitted)); Ramirez, 2016 WL 3014646, at *7 (at the outset, the judge "already views the defendant though the career offender-tinted glasses with a baseline sentence range multitudes higher than otherwise") (internal quotation marks and citation omitted)). Then, the Guidelines still "restrict a judge's discretion" in that the judge "must justify major departures." United States v. Hoopes, -- F. Supp. 3d --, No. 3:11-cr-00425-HZ, 2016 WL 3638114, at *5 (D. Or. July 5, 2016) (internal quotation marks and citation omitted). "Even if the sentencing judge sees a reason to vary from the Guidelines, 'if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, *then the Guidelines are in a real sense the basis for the sentence.*'" Molina-Martinez, 136 S. Ct. at 1345 (quoting Peugh, 133 S. Ct. at 2083) (emphasis in the original).

6

Given a sentencing court's reliance on the Guidelines, it is unsurprising that the Sentencing Commission's statistics "demonstrate the real and pervasive effect the Guidelines have on sentencing": "In less than 20% of cases since 2007 have district courts 'imposed above- or below-Guidelines sentences absent a Government motion.'" Id. at 1346 (quoting Peugh, 133 S. Ct. at 2084). The Guidelines "have the intended effect of influencing sentences imposed by judges." Id.

The Supreme Court's guidance and this court's experience with the Guidelines indicate that Johnson's rule as to the Sentencing Guidelines is not a procedural rule. Because the Guidelines so heavily anchor a sentencing judge's reasoning and discretion, a rule that removes some offenders from the career offender classification for sentencing "'alters . . . the class of persons the law punishes.'" Welch, 136 S. Ct. at 1264-65 (quoting Schriro, 542 U.S. at 353). The rule announced in Johnson as applied to the Guidelines is a substantive rule and therefore applies retroactively.

   *d. Petitioner is no longer a career offender under the Guidelines*

The parties first dispute whether Petitioner's conviction for resisting arrest qualifies as a "crime of violence" for the Career Offender Guidelines absent the residual clause. Under Massachusetts law, a person is guilty of resisting arrest if he or she "knowingly prevents or attempts to prevent a police officer, acting under color of his official authority, from effective the arrest of the actor or another by: (1) using or threatening to use physical force or violence against the police officer or another; or (2) using any other means which creates a substantial risk of causing bodily injury to such police officer or another." Mass. Gen. Laws ch. 268, § 32B(a)(1)-(2).

In United States v. Almenas, the First Circuit held that resisting arrest was categorically a crime of violence for career offender purposes, and specifically, that the first type of resisting arrest under § 32B(a)(1) fit the force clause of the Guidelines, USSG §4B1.2(a)(1), which defines "crime of violence" to "ha[v]e as an element the use, attempted use, or threatened se of physical force against the person of another," and the second type of resisting arrest under § 32B(a)(2) fit the (now unconstitutionally overbroad) residual clause, USSG § 4B1.2(a)(2). 553 F.3d 27, 33-35 (1st Cir. 2009). If resisting arrest were indivisible—specifically, that the statute does not "contain[] alternative elements" and § 32B(a)(1) and § 32B(a)(2) were merely alternative means of committing resisting arrest—then resisting arrest would be categorically not a "crime of violence." See Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). However, if resisting arrest were a divisible statute, then the court could inquire further and apply a "modified categorical approach," looking beyond the statutory elements to the charging paper and jury instructions to ascertain whether one or more alternative versions of resisting arrest qualify as a crime of violence. See id. at 2283-84 (quoting Taylor v. United States, 495 U.S. 575, 602 (1990)).

The court does not have to resolve the question of divisibility.[4] Even if resisting arrest were divisible and Mass. Gen. Laws ch. 268, § 32B(a)(1) could be considered a crime of violence, then the United States would still have the burden of establishing, through the introduction of documents allowed under Shepard v. United States, 544 U.S. 13 (2005), whether

---

[4] Petitioner argues that the Almenas was called into question by Johnson v. United States, 559 U.S. 133 (2010), which held that a violent felony under the ACCA required force capable of causing physical pain or injury to another person. However, the First Circuit has reaffirmed that resisting arrest qualifies as a violent felony or crime of violence. See United States v. Carrigan, 724 F.3d 39, 50 (1st Cir. 2013) (affirming that resisting arrest is a "violent felony" under the ACCA); United States v. Tavares, 705 F.3d 4, 32-33 (1st Cir. 2013) (affirming that resisting arrest is a "crime of violence" for purposes of the Guidelines).

Petitioner were convicted of resisting arrest under § 32B(a)(1)—potentially a crime of violence—or § 32B(a)(2)—not a crime of violence. The United States has not submitted any such documents and therefore has not satisfied its burden.

For those reasons, Petitioner is no longer—at least for purposes of his original sentencing—a career offender under the Guidelines.[5]

### e.  Conclusion

For the reasons stated above, Petitioner's Motion to Correct Sentence [#100] is ALLOWED. A new sentencing hearing is hereby set for October 7, 2016 at 3 pm.

IT IS SO ORDERED.

September 9, 2016

/s/ Indira Talwani
United States District Judge

---

[5] At the hearing on this motion, the United States withdrew its argument that Petitioner qualified as a career offender even without counting his resisting arrest conviction based on a prior drug guilty filed disposition.